NOT DESIGNATED FOR PUBLICATION

Nos. 116,952
116,953

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of A.W. and Y.B.,
Minor Children.

MEMORANDUM OPINION

Appeal from Reno District Court; PATRICIA MACKE DICK, judge. Opinion filed June 30, 2017. Affirmed.

*Armand Shukaev*, of Kansas Legal Services, for appellant.

*Daniel D. Gilligan*, assistant district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., POWELL and GARDNER, JJ.

*Per Curiam*:  L.H., the natural mother of A.W. and Y.B., appeals the district court's termination of her parental rights, claiming the district court's finding that she was unfit to properly care for her children was not supported by sufficient evidence. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2015, the State filed a petition to adjudicate A.W. and Y.B. as children in need of care, alleging that Y.B. had been abused. Both children were placed in the custody of the Department for Children and Families (DCF) and put in an out-of-home placement. A.W. and Y.B. were later adjudicated as children in need of care and ordered

1

to remain in DCF custody. The State filed a motion to terminate Mother's parental rights in July 2016.

At the termination hearing, a DCF worker, two social workers from St. Francis Community Services (SFCS), and Mother's psychologist, Dr. Mark Goodman, testified. The DCF worker testified about the background of the case. DCF was assigned the case due to an allegation of child abuse that Y.B. had suffered six broken ribs, a broken clavicle, and fingertip bruising on her cheek. Because DCF was unable to determine whether Y.B. was abused by either her father or Mother, the result was a substantiated finding of child abuse on an unknown perpetrator. The two SFCS workers testified about Mother's conduct during the case and the services they had provided to her. Dr. Goodman testified about the psychological evaluation that Mother completed, her mental wellbeing, and the therapy she received. Mother was diagnosed with intermittent explosive disorder with depressive paranoid feature. Based on her psychological evaluation, Dr. Goodman prescribed psychotropic medication for Mother and conducted psychotherapy and anger management sessions with her.

The district court took the case under advisement and asked the parties to submit proposed findings of fact and conclusions of law. In a memorandum decision, the district court found that Mother was unfit because (1) she suffers from a mental illness; (2) there was evidence of abuse; (3) DCF and SFCS made reasonable efforts to rehabilitate the family; (4) she failed to adjust her circumstances, conduct, or condition to meet her children's needs; (5) she failed to follow a reasonable reintegration plan; and (6) her unfitness could be presumed due to A.W. and Y.B. being in an out-of-home placement for more than 1 year. The district court also found that Mother's unfitness was unlikely to change in the foreseeable future. Finally, the district court determined that termination of Mother's parental rights would be in A.W.'s and Y.B.'s best interests.

Mother timely appeals.

## DID CLEAR AND CONVINCING EVIDENCE SUPPORT THE DISTRICT COURT'S DECISION TO TERMINATE MOTHER'S PARENTAL RIGHTS?

If a child is adjudicated a child in need of care, parental rights may be terminated "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2016 Supp. 38-2269(a). The Revised Kansas Code for Care of Children, K.S.A. 2016 Supp. 38-2201 *et seq.*, lists a number of nonexclusive factors the district court must consider in determining a parent's unfitness. See K.S.A. 2016 Supp. 38-2269(b) and (c). Any one of the factors may, but does not necessarily, establish grounds for terminating a parent's rights. K.S.A. 2016 Supp. 38-2269(f). The district court is not limited only to the statutory factors in making a determination of unfitness. K.S.A. 2016 Supp. 38-2269(b). Additionally, unfitness may be presumed if the child has been in an out-of-home placement for 1 year or more and the parent has "substantially neglected or willfully refused" to follow a reasonable reintegration plan. K.S.A. 2016 Supp. 38-2271(a)(5).

When reviewing a district court's findings on this point, our standard of review is clear: The district court's findings must be supported by clear and convincing evidence. K.S.A. 2016 Supp. 38-2269(a). In other words, we determine whether such evidence could have convinced a rational factfinder such facts were "highly probable, *i.e.*, by clear and convincing evidence," when viewed in the light most favorable to the State. *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In making this determination, we do "not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." 286 Kan. at 705.

Mother first argues that the district court erred in finding her unfit on the basis of mental illness because she attended therapy and took her medication. But Mother attended therapy for only 6 months. According to the SFCS workers, Mother reported

3

that she stopped attending therapy because Dr. Goodman got on her nerves and was asking too much of her. Mother also self-reported that she stopped taking the medication less than a month after her psychological evaluation because she did not like the way it made her feel. Dr. Goodman testified that it was very important for someone with intermittent explosive disorder, like Mother, to continue therapy. Dr. Goodman also testified that even though he did not get the impression that Mother would be abusive toward her children, it was certainly possible that someone with an explosive anger problem might abuse his or her children. According to Dr. Goodman, anger management was included in his therapy sessions with Mother, but SFCS never received verification that Mother had completed anger management. At no point did Mother report that she was seeing a different therapist or was taking different medication.

Mother also argues the district court erred in finding her unfit due to a failure of reasonable efforts by SFCS to rehabilitate the family because her housing was never inspected and visitation with A.W. and Y.B. was limited. One of the SFCS workers testified, however, that Mother's one bedroom apartment—while appropriate for her, A.W., and Y.B.—would not be appropriate in the foreseeable future because Mother was currently pregnant with twins. Because the apartment was inappropriate due to the number of bedrooms, an inspection was not needed. As to Mother's concerns about the limits on visitation, SFCS made reasonable efforts to facilitate visitation with A.W. and Y.B. While concerns about Mother's IQ—a concern that was never presented to the district court—prevented her visits with A.W. from progressing to more than once a month, it was just one of many reasons why the visits did not progress. As for Y.B., Mother was repeatedly told that she needed to contact her attorney and Y.B.'s doctor before visitation could begin. Mother was provided with the doctor's phone number but never called. Overall, SFCS provided Mother with every service it typically provided.

Mother further argues the district court erred in finding her unfit because she adjusted her circumstances and conduct to meet the needs of her children. According to

4

Mother, she obtained housing, got a job, took a parenting class, completed a psychological evaluation and followed its recommendations, participated in anger management, passed a drug screen, and acquired a medical card. But the record shows otherwise. As already discussed, the one bedroom apartment Mother obtained would not provide appropriate space for her, A.W., Y.B., and the twins she was carrying. The only evidence of Mother's job was one paystub. During visits with A.W., Mother failed to display any of the skills she was expected to have learned at the parenting class she completed. Mother stopped attending therapy, stopped taking her prescribed medication, and never proved that she had completed anger management.

Finally, Mother argues that the district court erred in presuming her unfit under K.S.A. 38-2271(a)(5), yet there is no dispute that A.W. and Y.B. were in an out-of-home placement for more than 1 year. Instead, Mother claims she followed the reintegration plan by completing the majority of its tasks and that DCF and SFCS failed to make reasonable efforts to rehabilitate the family. The record shows, however, that Mother failed to complete several important reintegration tasks, such as obtaining appropriate housing, attending therapy, taking prescribed medication, and completing anger management. There is sufficient evidence in the record to support the district court's finding that Mother was unfit by reason of conduct or condition that rendered her unable to properly care for A.W. and Y.B.

Given our approval of the district court's first unfitness finding, our next step normally would be to review the district court's findings that Mother's unfitness was unlikely to change in the foreseeable future and that termination of Mother's parental rights was in A.W.'s and Y.B.'s best interests. See K.S.A. 2016 Supp. 38-2269(a) and (g)(1). But Mother raises both issues in her brief only incidentally; therefore, we deem both issues abandoned. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013).

5

Affirmed.